# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE N. ALLEN, | Case No. 1:15-cv-00989-JLT (PC) |
| Plaintiff, | **ORDER DISMISSING THE FIRST AMENDED COMPLAINT WITH LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| v. | |
| AHLIN, et al., | **(Doc. 7)** |
| Defendants. | **30 DAY DEADLINE** |

After the Court dismissed the complaint for Plaintiff's failure to state a cognizable claim, he filed the first amended complaint, which is before the Court for screening. While Plaintiff corrected some of the deficiencies previously identified, the first amended complaint fails to identify specific instances of malfeasance upon which he bases his claims. Thus, the Court grants him ONE FINAL opportunity to amend his pleading to state cognizable claims.

**A. Screening Requirement**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a case brought under 42 U.S.C. §1983] at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

///

**B. <u>Summary of the first amended complaint</u>**

Plaintiff is a civil detainee at Coalinga State Hospital (CSH) in Coalinga, California – where the acts he complains of allegedly occurred. Plaintiff has narrowed his claims and the list of named defendants in this action. He now delineates only three claims against the Director of Nutritional Services, Jennie Porter; Supervising Cook II, Melissa Porter; and Dietician, Sara Gilbert. The first claim is that the defendants are violating his right to freely practice his religion under the First Amendment by his inability to obtain a vegetarian diet. (Doc. 7, pp. 6-9.) The second claim is that the defendants are violating the Eighth Amendment due to their deliberate indifference to his serious medical needs because he is not being provided with a low-fat, low-sodium, low-cholesterol diet which is needed to address his high blood pressure. (*Id.*, pp. 9-14.) The third claim is that defendants are violating Plaintiff's rights under the Fourteenth Amendment because CSH serves contaminated/spoiled food. (*Id.*, pp. 14-18.)

The vast majority of the first amended complaint was quite obviously copied and pasted over from the original complaint, though variously rearranged. (*Compare* Doc. 1, pp. 5-6 with Doc. 7, p. 6; Doc. 1, pp. 7-9 with Doc. 7, p. 7; Doc. 1, pp. 10, 14 with Doc. 7. P.8; Doc. 1, p. 7 with Doc. 7, p. 9; Doc. 1, pp. 7-9 with Doc. 7, p. 10; Doc. 1, p. 11 with Doc. 7, p. 11; Doc. 1, pp. 11-12, 14 with Doc. 7, p. 12; Doc. 1, pp. 13-14 with Doc. 7, p. 13; Doc. 1, p. 9 with Doc. 7, p. 15; Doc. 1, pp. 9, 10, 12 with, Doc. 7, p. 16; Doc. 1, pp. 13-14 with Doc. 7, p. 17; Doc. 1, p. 14 with Doc. 7, p. 18.) Plaintiff would do well refrain from such practices in a second amended complaint and to present only the factual allegations that specifically relate to each of his claims in an orderly and logical fashion.

The court provided Plaintiff the applicable pleading requirements and legal standards based on his stated claims when he was granted leave to file the first amended complaint. While he has provided some additional information Plaintiff fails to identify specific instances, or the number of times he was served food that did not meet his medical needs; did not meet his religious needs; and/or was contaminated/spoiled/unsuitable for human consumption. Further, while Plaintiff alleges that attempts to notify the remaining three defendants of the content/quality

of meals he was served via email and/or telephone calls, he fails to state allegations that show that any of the three remaining defendants actually were aware of the deficiencies in the meals he received and failed to take remedial action. Thus, this is the last time Plaintiff will be given the applicable standards[1] and opportunity to amend his pleading.

Plaintiff should not merely copy and paste sections over from his prior pleadings to any second amended complaint and should refrain from including extraneous details. Background facts and circumstances that occurred before/after/beyond the claims which Plaintiff delineates are superfluous, should not be included.

### C. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*,

---

[1] "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). As such, Plaintiff is entitled, at a minimum, to those rights provided to inmates confined in penal institution. *McNeal v. Mayberg*, 2008 U.S. Dist. LEXIS 101926 at *3, 2008 WL 5114650 (E.D.Cal. Dec. 3, 2008). Thus, the Court is on sound footing in relying upon cases involving incarcerated persons as a constitutional minimum to which Plaintiff is entitled.

580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of the doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief.  *Johnson v. City of Shelby*, __ U.S. __, __, 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).  To this end, allegations simply stating that a defendant was notified of a situation that violated Plaintiff's rights do not suffice.  Rather, Plaintiff must state factual allegations showing circumstances that gave a defendant knowledge that he was being served meals that violated his religious or medical needs, and/or were otherwise unfit for human consumption -- identified by an approximate number and applicable time frame in which he was served deficient meals. Since stated in general/broad terms, Plaintiff's allegations amount to nothing more than implying a "sheer possibility" that the named Defendants knew of acted unlawfully which is not sufficient. *Iqbal*, 556 U.S. at 678.

### 2. Linkage Requirement

The Civil Rights Act under which Plaintiff filed this action provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with a specific affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Here again, allegations which amount to nothing more than general summaries do not suffice.  Plaintiff must clearly identify which defendant(s) he feels are responsible for each violation of his constitutional rights and the specific factual basis.  This requires him to allege the wrongful acts/omissions that occurred, approximately how many times they occurred, approximately when they occurred and when each defendant became aware of the situation.  He must allege sufficient factual matter to put each defendant on notice of the specific factual basis for each of his claims to link them to his alleged deprivation(s).  *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

**D. Claims for Relief**

**1. Claim #1 -- Religion**

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400 (1997)).  The protections of the Free Exercise Clause are triggered when state officials substantially burden the practice of an one's religious beliefs by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement will be

1  upheld "'if it is reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514
2  F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254
3  (1987)).

4  "Restrictions on access to 'religious opportunities' . . . must be found reasonable in light of
5  four factors: (1) whether there is a 'valid, rational connection' between the regulation and a
6  legitimate government interest put forward to justify it; (2) 'whether there are alternative means of
7  exercising the right that remain open to prison inmates;' (3) whether accommodation of the
8  asserted constitutional right would have a significant impact on guards and other inmates; and (4)
9  whether ready alternatives are absent (bearing on the reasonableness of the regulation)." *Pierce*,
10 526 F.3d at 1209 (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *ref. Beard v. Banks*, 548
11 U.S. 521 (2006); *Mauro v. Arpaio*, 188 F.3d 1054, 1058-59 (9th Cir.1999) (en banc)).

12 The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

17 42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants
18 substantially burdened the exercise of his sincerely held religious beliefs. *Warsoldier v.*
19 *Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). If Plaintiff meets his burden, Defendants must
20 demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in
21 furtherance of a compelling governmental interest *and* the least restrictive means of furthering
22 that compelling governmental interest." *Id*. (emphasis in original). "RLUIPA is to be construed
23 broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id*.

24 In Claim #1 (Doc. 7, pp. 6-9), Plaintiff alleges that he "has been for the past 31 years
25 because of religious belief a vegetarian." (*Id.*, at p. 7.) This tends to show that Plaintiff has a
26 sincerely held religious belief. However, a few lines earlier on that same page, in that same
27 claim, Plaintiff added a line that the Defendants "on many occasions refused to correct and serve
28

1  plaintiff a vegetarian meal due to religious belief of not eating *any red meat*." (*Id.*, emphasis
2  added.) Not eating red meat is not the same as being a vegetarian. Either Plaintiff's religious
3  beliefs do not allow him to eat *red* meat, or they do not allow him to eat *any* meat.[2] This causes a
4  lack of clarity related to whether he actually requires a vegetarian diet. Further, as stated in the
5  prior screening order, Plaintiff's claim is not cognizable because he fails to identify any specific
6  instances (or an approximate number of instances) when he received meals that conflicted with
7  his known religious belief that would demonstrate he suffered a substantial burden on his
8  religious beliefs. Likewise, he fails to show specific basis upon which any Defendant(s) was
9  aware that his vegetarian requirements were for religious purposes (rather than related to his
10 medical needs) which prevents his claims regarding infringement of his religious practices from
11 being substantively plausible. *Johnson*, __ U.S. at __, 135 S.Ct. at 347. Thus, Plaintiff's
12 allegations in the first amended complaint continue to be too general and conclusory to be
13 cognizable.

### 2. Claims #2 & #3 -- Deliberate Indifference

15 The Eighth Amendment protects prisoners from inhumane methods of punishment and
16 from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*
17 *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison
18 officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,
19 sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.
20 2000) (quotation marks and citations omitted). To establish a violation of the Eighth
21 Amendment, the prisoner must "show that the officials acted with deliberate indifference. . . ."
22 *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v.*
23 *County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).
24 The deliberate indifference standard involves both an objective and a subjective prong.
25 First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834.
26 Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate

---

[2] The Court notes, confusingly, that Plaintiff claims to eat fish, but is allergic to shell fish. (Doc. 7 at 13)

7

health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). As stated in the prior screening order, it is under this standard that Plaintiff's claims regarding food, both its contamination and in connection with controlling his hypertension, must be viewed.

### a. Claim #2 -- Medical

Since Plaintiff alleges that his vegetarian diet was also dictated by his hypertension, Claim #2 (Doc. 7, pp. 9-14) must be analyzed as a medical claim under the Eighth Amendment.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc))

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994). For screening purposes, the Court accepts Plaintiff's hypertension as a serious medical need.

1    Deliberate indifference is "a state of mind more blameworthy than negligence" and
2 "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v.*
3 *Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). "Deliberate indifference
4 is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this
5 standard, the prison official must not only 'be aware of the facts from which the inference could
6 be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the
7 inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been
8 aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter
9 how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188
10 (9th Cir. 2002)).

11   In medical cases, this requires showing:  (a) a purposeful act or failure to respond to a
12 prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680
13 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). More generally, deliberate indifference "may
14 appear when prison officials deny, delay or intentionally interfere with medical treatment, or it
15 may be shown by the way in which prison physicians provide medical care." *Id.* (internal
16 quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*;
17 *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in
18 'substantial' harm to the prisoner is not necessary.").

19    While Plaintiff has reduced many of his allegations regarding his diet and hypertension,
20 he still does not show specific facts as to what each of the three remaining defendants knew of
21 his medical condition and how it related to his dietary requirements of what they knew of the
22 inadequacies in the meals he received or when they acquired this knowledge. Plaintiff's
23 allegations that records of his appeals/grievances and recommended solutions are in his dietary
24 files as well as files located in Audrey King's and Jennie Porter's offices are insufficient. He
25 provides no specifics as to the timing of these appeals to show knowledge and deliberate
26 indifference of this issue by any of the remaining Defendants. Simply because a file is in one's
27 office does not necessarily mean there is knowledge of their contents.
28

Further, Plaintiff alleges that he is allergic to iodine, penicillin, all raw milk products as well as crab and shellfish. (Doc. 7, p. 13.) However, he fails to show that these allergies are connected to his claim that he did not receive the diet ordered by his medical professionals. Likewise, he does not set forth any allegations to show that these conditions impact his hypertension or that they constitute a serious medical. Thus, without more, these allegations regarding Plaintiff's allergies, fail to demonstrate a cognizable claim.

Plaintiff's allegations regarding difficulty he has obtaining appropriate meals for his hypertension are not cognizable since he fails to show both that he was not provided a medically ordered diet which any of the remaining Defendants were aware of and failed to rectify.

### b. Claim #3 -- Contamination/Spoliation

Plaintiff identifies Claim #3 as follows:

> Plaintiff have [sic] complained numerous times to defendants' [sic] regarding food contamination and preparation of plaintiff's diet. Plaintiff have [sic] found axel grease, bugs, hair, and other contaminates in plaintiff's food on many occasions without any means of replacing the contaminated items. Once again 'deliberate indifference" attitude towards plaintiff's need to consume food which is not contaminated with harmful objects. A 14th USCA Amendment violation.
> Plaintiff made his complaint to the unit Treatment staff who documented the contamination and attempted to e-mail Nutritional Services about the contamination with no results. The safety of plaintiff's diet ultimately falls upon Jennie Porter, Melissa Sandoval, and Sara Gilbert.

(Doc. 7, p. 14.) Plaintiff begins his allegations under this claim with allegations that he is served food that violates California Code of Regulations section 71243(g)(7)(h) which provides that "[f]ood shall be prepared by methods which conserve nutritive value, flavor and appearance. Food shall be served attractively at appropriate temperatures and in a form to meet individual needs." (*Id*, at pp. 14-15.) The existence of regulations such as these governing the conduct of prison employees and for prosecution of criminal activities does not necessarily entitle Plaintiff to sue civilly to enforce the regulations, or for damages based on their violation. The Court has found no authority to support a finding that there is an implied private right of action under the California Code of Regulations and Plaintiff has provided none. Given that the statutory language does not support an inference that there is a private right of action, the Court finds that

1  Plaintiff is unable to state any cognizable claims upon which relief may be granted based on the
2  violation of section 71243(g)(7)(h).

3  Further, Plaintiff fails to state any compliance the California Tort Claims Act ("CTCA"),
4  set forth in California Government Code sections 810 et seq., which dictates a plaintiff may not
5  bring a suit for monetary damages against a public employee or entity unless the plaintiff first
6  presented the claim to the California Victim Compensation and Government Claims Board
7  ("VCGCB" or "Board"), and the Board acted on the claim, or the time for doing so expired.

8  However, adequate food is a basic human need which is protected by the Eighth
9  Amendment. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), (abrogated on other grounds
10 by *Sandin v. O'Connor,* 515 U.S. 472, 115 S.Ct. 2293 (1995)).  While food served in a
11 governmental facility need not be "tasty or aesthetically pleasing," it must be "adequate to
12 maintain health." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).  Objectively, extreme
13 deprivations are required to make out a conditions of confinement claim and only those
14 deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to
15 form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

16 The Court allowed Plaintiff to amend this claim based on his allegations of being served
17 food that did not meet the minimal civilized societal standards since it was contaminated and/or
18 spoiled.  However, his statement of facts/allegations for Claim #3 in the first amended complaint
19 contains minimal allegations anything regarding contamination of his food; rather he states facts
20 related to his caloric intake, some food allergies/intolerances, and allegations that pertain to his
21 dietary needs for his hypertension and religion.  (*See* Doc. 7, pp. 14-18.)

22 Plaintiff's few allegations regarding contamination/spoilage are found in one paragraph
23 which does not delineate any specific instance(s) of occurrence.  (*Id.*, at p. 17.)  However, in that
24 same paragraph, Plaintiff alleges that "Psych Techs" have witnessed and documented all of the
25 instances that Plaintiff alludes to in his allegations.  (*Id.*)  Thus, Plaintiff should be able to include
26 allegations as to specific instances (or at least the number of incidents in a given time period)
27 when he was served contaminated/spoiled food, since temporarily unconstitutional conditions of
28

confinement do not rise to the level of constitutional violations. *See Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1995) *ref Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered). Notably, a sustained deprivation of food may violate the Eighth Amendment; however, isolated incidents of denial of food do not. *Foster v. Runnels*, 554 F.3d 807, 812, n.1 (9th Cir. 2009).

Further, Plaintiff fails to link any of the remaining Defendants to his allegations that he was served contaminated/spoiled food. Thus, Plaintiff fails to state a cognizable claim regarding the procedures that he alleges led to contamination/spoliation of the food served to him at CSH.

**3. Supervisory Liability**

It appears that Plaintiff has whittled the named Defendants in this action to those who hold supervisory positions. However, as stated in the prior screening order, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term

'supervisory liability' is a misnomer." *Id.* Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.*

Claims #2 & #3 assert the Defendants' deliberate indifference to the food he was being served. As previously stated, deliberate indifference requires a showing that a given Defendant knew a violation of Plaintiff's rights was occurring and failed to take action within their duties/power. It is not enough for Plaintiff to allege that other prison staff attempted to contact one of the remaining defendants without affect. Rather, Plaintiff must show that a remaining defendant, or grouping thereof, knew of Plaintiff's needs (medical or otherwise), knew that they were not being met, and thereafter intentionally failed to take remedial steps -- an "email" being "attempted" to no avail does not raise a subsequent lack of ameliorating steps to deliberate indifference.

### E.   CONCLUSION

As delineated above, Plaintiff has failed to state any cognizable claims. Thus, he is being given **ONE FINAL** opportunity to file an amended complaint within 30 days of the service of this order. Within that same time, if Plaintiff decides not to pursue this action, he must file a notice of voluntary dismissal. If Plaintiff needs more time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than 30 days from the date of service of this order.

If Plaintiff chooses to file a second amended complaint, he must demonstrate how the

conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

A second amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with **ONE FINAL** opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, the Court ORDERS:

1. Plaintiff's first amended complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within 30 days from the date of service of this order, Plaintiff must file either a second amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated:   **April 5, 2016**                              /s/ Jennifer L. Thurston
                                                     UNITED STATES MAGISTRATE JUDGE